1  Harris Zimmerman, California State Bar No. 22653
   Michael James Cronen, California State Bar No. 131087
2  ZIMMERMAN & CRONEN, LLP
   1330 Broadway, Suite 710
3  Oakland California 94612
   telephone:510.465.0828
4  facsimile:510.465.2041
   e-mail: mcronen@zimpatent.com
5
   Wayne E. Ferrell, Jr., Mississippi State Bar No. 5182
6  ATTORNEY AT LAW
   405 Tombigbee Stree t
7  Jackson, Mississippi 39225-4448
   telephone:601.969.4700
8  facsimile:601.969.7514
   e-mail: wferrell@airlawonline.com
9
   Attorneys for Plaintiffs.
10

11
              IN THE UNITED STATES DISTRICT COURT
12         FOR THE EASTERN DISTRICT OF CALIFORNIA
                        FRESNO DIVISION
13

14
   SHEILA DOYLE and CHARLES       )   Case No:
15 LORTZ,                          )
                                   )
16          Plaintiffs,            )   **COMPLAINT FOR FRAUD AND**
                                   )   **DECEIT; FRAUDULENT**
17 v.                              )   **INDUCEMENT AND BREACH**
                                   )   **OF CONTRACT; BREACH OF**
18 ILLINOIS CENTRAL  RAILROAD      )   **COVENANT OF GOOD FAITH**
   COMPANY dba CANADIAN            )   **AND FAIR DEALING;**
19 NATIONAL, CN and/or CN/CI;      )   **INVASION OF PRIVACY AND**
   NATIONAL RAILROAD               )   **FALSE LIGHT; STALKING;**
20 PASSENGER CORPORATION; and      )   **NUISANCE; DEFAMATION;**
   LORI ANN VENDETTI,              )   **AND MALICIOUS DEFENSE**
21                                 )
            Defendants.            )   **JURY TRIAL DEMANDED**
22 _____)

23        Plaintiffs, Sheila Doyle and Charles Lortz, for their Complaint against

24 Defendants, Illinois Central Railroad Company dba Canadian National, CN and/or

25 CN/CI; the National Railroad Passenger Corporation; and Lori Ann Vendetti,

26 allege the following:

27

28 Complaint                              1

# THE PARTIES

1.  Plaintiff, Sheila Doyle, is an adult resident citizen of Murphys, California, who lives with her husband, Charles Lortz, at their residence located in the town of Murphys, Calaveras County, California.

2.  Plaintiff, Charles Lortz, is an adult resident citizen of Murphys, California, who lives with his wife, Sheila Doyle, at their residence located in the town of Murphys, Calaveras County, California.

3.  Defendant,  Illinois Central Railroad Company dba Canadian National, CN and/or CN/CI (hereinafter "Canadian National"), is a corporation organized and existing under and by virtue of the laws of a state other than the State of California. Canadian National is doing business in the State of California and within this judicial district.

4.  Defendant National Railroad Passenger Corporation dba AMTRAK (hereinafter "NRPC"), is a federally-chartered corporation with a majority of its capital stock owned by the United States which is organized and existing under and by virtue of the laws of a state other than the State of California. NRPC is qualified to do business and is doing business in the State of California and within this judicial district.

5.  Upon information and belief, Defendant Lori Ann Vendetti (hereinafter "Vendetti"), is an adult resident citizen of a state other than the State of California.  Vendetti is doing business in the State of California and within this judicial district.

6.  Plaintiffs are informed and believe and thereon allege that at all times herein mentioned each of the Defendants and their agents, employees, and co-conspirator  was the agent, employee and co-conspirator of each of the remaining Defendants, and in doing and the things hereinafter alleged, was within the course

Complaint                                    2

and scope of such agency, employment and conspiracy and the Defendants are vicariously liable and responsible for each others' actions pursuant to master and servant, employer/employee, agency and agent, conspirator and co-conspirator and/or respondeat superior.

## JURISDICTION AND VENUE

7. Plaintiffs' claims are brought under the Laws of the United States and the Laws of the State of California, including state statutory and/or common law, as hereinafter set forth.

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1349.

9. Plaintiff is a citizen of the State of California. Defendants are not citizens of the State of California and the matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars ($75,000). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1338(a).

10. The court has jurisdiction over all state statutory and common law claims in this matter pursuant to 28 U.S.C. §1367 (Supplemental Jurisdiction) and/or the principals of supplemental jurisdiction.

11. Venue is proper in this Court under 28 U.S.C. §1391 as the judicial district in which the Defendants have done and are doing business, in which Plaintiff's reside, and in which the claims arose and/or a substantial amount of the property that is the subject of the action is situated.

## FIRST CAUSE OF ACTION
### Fraud

12. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

Complaint                                      3

13. On and before April 6, 2004, Plaintiffs, Mr. Lortz and Ms. Doyle, a married couple, lived with and cared for their two adult sons. Their eldest son, Michael, has a form of autism, known as Asperger's Syndrome, and their second son, Christopher, has learning disabilities including Attention Deficit Hyperactivity Disorder (ADHD) and dyslexia. Ms. Doyle's mother, who was more than ninety years old and becoming increasingly frail, was also cared for and lived with Mr. Lortz and Ms. Doyle on and before April 6, 2004.

14. On and before April 6, 2004, Mr. Lortz and Ms. Doyle owned and operated a successful landscaping business located in Murphys, California, and Ms. Doyle also worked with developmentally disabled children as a teacher's aide at Bret Harte High School, located in Angels Camp, California. Ms. Doyle was also very active as a community volunteer to supporting, helping manage, and teaching children's courses in, a community theater organization in located in Murphys California. On and before April 6, 2004, Ms. Doyle was also very active performing in local community theater productions, for example, dancing in the musical, *West Side Story,* and in a more recent production of Shakespear's *McBeth.* For Mr. Lortz and Ms. Doyle, all of this forever changed on April 6, 2004.

15. Mr. Lortz and Ms. Doyle had been avid train travelers all their lives. On and before April 6, 2004, Plaintiffs Sheila Doyle and Charles Lortz, decided to take time off from work, and arrange for the care of their sons and Ms. Doyle's mother, so they could celebrate their twenty-fifth wedding anniversary on a "second honeymoon" vacation, a railway excursion from New Orleans to Chicago on the train called *The City Of New Orleans*. Previously, Mr. Lortz and Ms. Doyle could not afford the time and money to pay for their dream trip due to their commitments to their children and Ms. Doyle's mother. Business was good,

Complaint                                      4

however, and they decided to save up for the trip and the cost of care for their

dependants while they were away.

16.  On April 6, 2004, Sheila Doyle and Charles Lortz, were on their second

honeymoon dream trip, traveling as passengers on Amtrak Train No. 58, *The City*

*Of New Orleans.*  The train was heading north from New Orleans to Chicago.  Ms.

Doyle and Mr. Lortz were in good health and fine spirits, relaxing before dinner

and watching a movie in the train's lounge car, when suddenly and without

warning, at about 6:33 p.m. central daylight time, the entire train, including all six

of its passenger cars, derailed.  The passenger car occupied by Mr. Lortz and Ms.

Doyle skidded off the tracks and rolled to the right 90 degrees and slid on its side

down off a bridge.  It eventually came to rest in the swamp-like flood plane of Big

Black River, which is located near Flora, in Yazoo County, Mississippi.  Flora is a

remote area, away from any roads, hospitals or other signs of civilization, located

several miles north of Jackson, Mississippi.  The wreck of *The City of New*

*Orleans* caused one death and several serious and minor injuries to the train's

passengers and crew, including the serious, permanent and life-altering injuries

and damages to Ms. Doyle and Mr. Lortz as set forth in this Complaint.

17.  On and about April 6, 2004, Defendant Canadian National owned and

operated the railroad tracks located in Yazoo County, Mississippi.  It was also

responsible for maintaining, inspecting, owning, operating, repairing, rebuilding

and servicing the railroad tracks and insuring that the railroad tracks (located near

milepost 196.5) were in serviceable condition, safe and not unreasonably

dangerous.

18.  As established by the evidence, and as otherwise set forth in the

National Transportation Safety Board Railroad Accident Report, NTSB/RAR-

05/02, entitled *Derailment of Amtrak Train No. 58, <u>City of New Orleans</u>, Near*

Complaint                                    5

*Flora, Mississippi April 6, 2004*, this train wreck was the result of the gross and willful negligence of Defendant Canadian National, which caused Plaintiffs Sheila Doyle and Charles Lortz significant and permanent disabilities, damages, and injuries, including, but not limited to Ms. Doyle's burst T-12 vertebrae and its surgical replacement with Ms. Doyle's own, "harvested" rib, and a metal cage appliance with metal screws fused to Ms. Doyle's T-11 and L-1 vertebrae, head injuries, injuries to the face, back, shoulder and ribs, scars, nerve damage, memory loss, unconsciousness, concussions, confusion, neuralgia, chronic pain syndrome, nerve damage and physical disfigurement.

19.  On April 6, 2004, and at all relevant times, Defendant Canadian National, its employees, agents, insurers and indemnitors, were responsible for the railroad and railroad tracks in the area of the train wreck. The railroad tracks, instead of being safe, were in a state of disrepair, were unsafe and were unreasonably dangerous. As described and otherwise set forth in the National Transportation and Safety Board Railroad Accident Report identified in paragraph 18, above, Canadian National failed to "properly maintain and inspect its track, resulting in a rail shift and the subsequent derailment of the train". See, Executive. Summary, p.1.

20.  The truth is that Defendants' railroad tracks were not safe, were defective, and were unreasonably dangerous on April 6, 2004, and as a result of the defective and unreasonably dangerous conditions of the tracks, Plaintiffs Charles Lortz and Sheila Doyle have sustained substantial, permanent and life-altering injuries and damages.  But Defendants did not stop harming Plaintiffs after they wrecked *The City Of New Orleans*.

21.  After the wreck of *The City Of New Orleans*, Defendants, and Defendant Lori Ann Vendetti, individually, and their agents, employees, and co-

Complaint                                        6

conspirators, conspired and embarked on a course of outrageous conduct against Plaintiffs, the purpose of which was to systematically cause Plaintiffs emotional distress, mental anguish, apprehension, and fear, in an attempt to minimize, or avoid entirely, paying Plaintiffs' medical bills and settling Plaintiffs' claims for damages caused by Defendants' train wreck. This includes multiple, ongoing acts of fraud and deceit, broken promises, invasions of privacy, stalking, public and private nuisance, defamation, humiliation, and embarrassment.

22. Recently, for example, in May, 2008, Defendants outrageously and falsely attributed Ms. Doyle with worshiping the swastika badge of Adolf Hitler's Nazi party. Also in May, 2008, Defendants outrageously and falsely accused Ms. Doyle of abusing prescription pain and anti-seizure medications prescribed by her physicians to control her chronic pain syndrome, including chronic back and rib pain, pain from nerve damage, and scar tissue neuralgia, all of which was caused by Defendants' wreck of *The City Of New Orleans*.

23. Beginning soon after wreck of *The City Of New Orleans* and as recently as the Christmas Holidays, 2007, Defendants, and Lori Ann Vendetti, individually, sent various agents and investigators, identified herein below, to invade Plaintiffs' privacy, and one or more of these individuals contacted neighbors of the Plaintiffs and accused Plaintiffs of "insurance fraud" even though there is no evidence of any such alleged "insurance fraud" and, in fact, Defendants and their agents and investigators were fully aware there is absolutely no evidence of any such "insurance fraud" on the part of Plaintiffs.

24. After the wreck of *The City Of New Orleans*, Plaintiffs Charles Lortz and Sheila Doyle were fraudulently induced by Defendant Canadian National and Defendant Lori Ann Vendetti, individually, and their employees, agents, and co-conspirators, to forego hiring an attorney to represent Plaintiffs in connection with

Complaint                                        7

the injuries they suffered in the train wreck.  Defendants and Defendant Lori Ann Vendetti, individually, repeatedly advised Plaintiffs, both orally and in writing, not to talk to any lawyers and this began soon after the wreck of *The City Of New Orleans*,  during Plaintiffs stay in the hospital and/or at the Quality Inn Motel located in downtown Jackson, Mississippi, where Defendants sent Plaintiffs to stay for several days over the Easter Holiday weekend, while the unstable condition of Ms. Doyle's burst T-12 vertebrae continued to deteriorate, before Defendants finally arranged for Mr. Lortz and Ms. Doyle to return home to California by air ambulance to be seen be a specialist spine surgeon.

25.  On all occasions subsequent to wreck of *The City Of New Orleans,* the Defendants and Defendant Lori Ann Vendetti, individually, represented to the Plaintiffs that there would be no need for Plaintiffs to hire an attorney because the Defendants will be honest and promptly and fairly pay Plaintiffs' claim, once the full extent of Plaintiffs' injuries were determined.

26.  On or about October 28, 2004, Defendants and Defendant Lori Ann Vendetti, individually, wrote a letter to Plaintiffs stating "we can mutually agree on a figure to resolve your claim without attorney involvement" and that "I will be honest with you".  True and correct copies of correspondence between Defendant Lori Ann Vendetti and the Plaintiffs are attached hereto collectively as <u>Exhibit A</u>.

27.  On or about June 22, 2005, Defendants and Defendant Lori Ann Vendetti, individually,  wrote a letter to Plaintiffs offering to submit  "proposals for you *based on what your future needs may be, such as a new car, vacations, children's college, retirement, etc."* and stating "I would be more then (sic.) willing to come to your home and discuss further resolution of your claim with both" of you and "I am confident that we can settle this matter without a long and drawn out litigation period".  See, <u>Exhibit A</u> (Emphasis added).

28.  On or about August 25, 2005, Defendants and Defendant Lori Ann Vendetti individually, wrote a letter to Plaintiffs offering "to come out to California and sit down with both [Plaintiff's] face-to-face and try to continue talking" in "face-to-face negotiations".  See, Exhibit A.

29.  Defendants' apparent generosity and proclamations of honesty belied their true intentions.  Defendants had an ulterior motive at work here.  Defendants and the Defendant, Lori Ann Vendetti, individually, misled Plaintiffs into falsely believing that their claims would be fairly, honestly and promptly settled, to buy time so that the Plaintiffs would not hire an attorney and file a lawsuit in Mississippi until after September 1, 2004, which was the effective date of Section 11-1-60 of the Mississippi Code of 1972, as Annotated and Amended, which, for the first time, placed caps on the amount of damages recoverable for personal injury claims like Plaintiffs' claims against Defendants.

30.  It now appears that the Defendants and the Defendant, Lori Ann Vendetti, individually, never had any intention of keeping their promise to treat Plaintiffs fairly and honestly, or to pay anything to compensate for Plaintiffs permanent injuries and damages caused by Defendants' wreck of *The City Of New Orleans* .

31.  On May 10, 2008, Defendants' agent and/or employee or attorney, Mr. Charles Russell H. Russell, III, advised Plaintiffs for the first time that Defendants denied any obligation for payment that Plaintiffs would receive nothing, i.e. no payment of any kind, on their claims for their life-altering injuries and damages caused by Defendants' wreck of *The City Of New Orleans*.

32.  The Defendants and the Defendant, Lori Ann Vendetti, individually, falsely represented to Plaintiffs that Plaintiffs should not hire an attorney, and that Defendant  "will be honest with you" and  would promptly and fairly settle their

Complaint                                    9

claims, which Plaintiffs reasonably relied upon to their detriment, when the truth

now appears that the Defendants never had any such intention.

33.   On all occasions, The Defendants and the Defendant, Lori Ann

Vendetti, individually, fraudulently represented to the Plaintiffs that they would

fairly, honestly and promptly pay Plaintiffs' claims, when in truth and in fact

Defendants had no such intention, and they have intentionally delayed and

continue to delay to make good on their promises to pay Plaintiffs' medical

expenses and fairly settle Plaintiffs claims.

34.   On or after April 6, 2008, Defendants and each of them, knowingly and

willfully conspired and agreed among themselves to delay Plaintiffs and to deny

payment for Plaintiffs' claims and to defraud Plaintiffs, and Defendants furthered

the conspiracy by cooperating with, lending aid and encouragement to, and/or

ratifying and adopting the acts of, the Defendants as alleged herein.

35.   Plaintiffs are informed and believe and thereon allege that the last overt

act in pursuance of Defendants' conspiracy took place  on or about May 10,

2008,when Defendants' agent and/or employee or attorney, Mr. Charles H. Russell,

III,  advised Plaintiffs for the first time that Defendants would pay Plaintiffs

nothing, i.e. no payment of any kind, for their permanent and life-altering injuries

and damages caused by Defendants' wreck of *The City Of New Orleans*.

36.   Plaintiffs had been strung-along and lacked knowledge of Defendants'

fraud and conspiracy due to the misrepresentations and false and broken promises

of Defendants, and Defendant Lori Ann Vendetti, individually, to treat Plaintiffs

fairly, to  "be honest with" Plaintiffs, and to promptly settle and pay Plaintiffs'

claims, and Plaintiffs could not have discovered Defendants' fraud and other

misconduct sooner due to Defendants misrepresentations and broken promises,

which Plaintiffs discovered as a continuing actual fraud on May 10, 2008, when

Defendants' agent and/or employee or attorney, Mr. Charles H. Russell, III, advised Plaintiffs for the first time that Defendants would pay Plaintiffs nothing, i.e. no payment of any kind, on their claims for injuries and damages caused by Defendants' wreck of *The City Of New Orleans*.

37.  The foregoing acts and omissions committed by Defendants constitute actual fraud and conspiracy to commit fraud in violation of California Civil Code §1572(1)-(5) and the common law, which proximately caused the damages and injuries to Plaintiffs Charles Lortz and Sheila Doyle as set forth in this Complaint.

38.  Defendants, and Defendant Lori Ann Vendetti, individually, acted willfully and with the intent to cause injury to Plaintiffs, and Defendants are and were guilty of malice and/or oppression and/or fraud in conscious disregard of Plaintiffs' rights thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar misconduct in the future.

## SECOND CAUSE OF ACTION
### Deceit

39.  Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

40.  The foregoing acts and omissions committed by Defendants constitute fraudulent deceit and conspiracy to commit fraudulent deceit in violation of California Civil Code Sections 1709 and 1710(1)-(4), and the common law, which proximately caused the damages and injuries to Plaintiffs Charles Lortz and Sheila Doyle as set forth in this Complaint.

Complaint

## THIRD CAUSE OF ACTION
## Fraudulent Inducement And Breach Of Contract

41.  Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

42.  Defendants and Defendant Lori Ann Vendetti, individually, promised they would promptly and fairly pay Plaintiffs' claims, including their written promise to  "be honest with" Plaintiffs, and to pay  for "what [Plaintiffs'] future needs may be, such as a new car, vacations, children's college, retirement, etc."

43.  Plaintiffs' relied upon the promises of Defendants and Defendant Lori Ann Vendetti, individually, and delayed hiring a lawyer or filing suit for damages as Defendants' requested.

44.  Defendants and Defendant Lori Ann Vendetti, individually, fraudulently induced Plaintiffs to agree to forego hiring a lawyer to buy time so that the Plaintiffs would not file a lawsuit in Mississippi until after September 1, 2004, which was the effective date of Section 11-1-60 of the Mississippi Code of 1972, as Annotated and Amended, which placed caps on the amount of damages recoverable for personal injury claims like Plaintiffs' claims against Defendants.

45.  Defendants and Defendant Lori Ann Vendetti, individually, breached their agreement to promptly, honestly and fairly pay Plaintiffs' claims as Defendants had promised they would do, both orally and in writing.

## FOURTH CAUSE OF ACTION
## Breach Of Implied Covenant of Good Faith And Fair Dealing

46.  Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

47.  Defendants and Defendant Lori Ann Vendetti, individually, promised

Complaint                                    12

they would promptly, honestly and fairly pay Plaintiffs' claims, including payment for "what [Plaintiffs'] future needs may be, such as a new car, vacations, children's college, retirement, etc.", in exchange for Plaintiffs' promises not to hire lawyers or file lawsuits for damages.  Plaintiffs performed their obligations under the parties' agreement, and delayed hiring a lawyer or filing suit for damages as Defendants' requested.

48.  Defendants and Defendant Lori Ann Vendetti, individually, breached their duty of good faith and fair dealing under their agreement with Plaintiffs by inducing Plaintiffs to forego hiring a lawyer and delay filing a lawsuit with the ulterior motive of buying time so that the Plaintiffs would not file a lawsuit in Mississippi until after September 1, 2004, which was the effective date of Section 11-1-60 of the Mississippi Code of 1972, as Annotated and Amended, which, for the first time, placed caps on the amount of damages.

49.  Defendants and Defendant Lori Ann Vendetti, individually, breached their duty of good faith and fair dealing under their agreement with Plaintiffs when, on May 10, 2008, Defendants' denied any compensation to Plaintiffs, stating Defendants would pay Plaintiffs nothing, i.e. no payment of any kind, to compensate Plaintiffs for their life-altering permanent injuries and damages caused by Defendants' wreck of *The City Of New Orleans*.

## FIFTH CAUSE OF ACTION
### Invasion of Privacy And False Light

50.  Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

51.  Instead of professionally and honestly handling Plaintiffs' claims, adjusting Plaintiffs' claims and paying Plaintiffs' claims as the Defendants falsely

promised they would, the Defendants and the Defendant, Lori Ann Vendetti, individually, and their agents, employees and attorneys, set out on a course of outrageous conduct to harass and vilify Plaintiffs by willfully, maliciously and repeatedly following, harassing, stalking Plaintiffs and invading Plaintiffs' privacy, falsely attributing Ms. Doyle with worshiping the swastika badge of Adolf Hitler's Nazi party, falsely accusing Mr. Lortz and Ms. Doyle of "insurance fraud", and falsely accusing Ms. Doyle of abusing pain and anti-seizure medications prescribed by her physicians to control her chronic pain caused by Defendants' wreck of *The City Of New Orleans*, among others.

52.  As recently as the Christmas Holidays, 2007, and on Valentine's Day, 2007, the Defendants and the Defendant, Lori Ann Vendetti, individually, sent their agents, attorneys, employees, and/or investigators, including, but not limited to, Michael "Doc" Black, Craig Riesterer, Robert Zehrung, Brandon August, and Investigative Consultants International, Inc., to follow, harass, stalk, and invade the privacy of Plaintiffs and they have, by their presence and deeds, made threats with the intent to place the Plaintiffs in reasonable fear of bodily harm.

53.  Defendants' invasion of Plaintiffs privacy, especially on Valentine's Day, is painfully and cruelly ironic since it was Defendants' train-wreck invasion of another romantic occasion, Plaintiffs' second honeymoon,, that forever changed Plaintiffs' lives together.

54.  The Defendants and the Defendant, Lori Ann Vendetti, individually, hired agents, attorneys, employees, and/or investigators, including, but not limited to Michael "Doc" Black, Craig Riesterer, Robert Zehrung, Brandon August, and Investigative Consultants International, Inc., one or more of whom contacted neighbors of the Plaintiffs and told Plaintiffs' neighbors that Defendants were investigating a case of "insurance fraud" on the part of Plaintiffs, when, in fact,

Defendants and their agents and investigators were fully aware that there is absolutely no evidence of any such "insurance fraud" on the part of Plaintiffs.

55.   The Defendants and the Defendant, Lori Ann Vendetti, individually, and their agents, attorneys, employees, and/or investigators, including, but not limited to Michael "Doc" Black, Craig Riesterer, Robert Zehrung, Brandon August, and Investigative Consultants International, Inc., have knowingly and willfully set about on a course of conduct directed at the Plaintiffs which they knew and were fully aware would cause Plaintiffs serious alarm, annoyance and harm.

56.   The Defendants and the Defendant, Lori Ann Vendetti, individually, and their agents, attorneys, employees, and/or investigators, including, but not limited to Michael "Doc" Black, Craig Riesterer, Robert Zehrung, Brandon August, and Investigative Consultants International, Inc., intentionally intruded, physically and otherwise, upon the solitude and seclusion of Plaintiffs and their private affairs and concerns, and such intrusion was highly offensive to Plaintiffs, as it would be to any reasonable person.

57.   The Defendants and the Defendant, Lori Ann Vendetti, individually, and their agents, attorneys, employees, and/or investigators, including, but not limited to Michael "Doc" Black, Craig Riesterer, Robert Zehrung, Brandon August, and Investigative Consultants International, Inc., intentionally publicly disclosed private facts and information about Plaintiffs and falsely accused Plaintiffs' of activities which were offensive and objectionable and not of any legitimate public concern.

58.   The Defendants and the Defendant, Lori Ann Vendetti, individually, and their agents, attorneys, employees, and/or investigators, including, but not limited to Michael "Doc" Black, Craig Riesterer, Robert Zehrung, Brandon

Complaint                                    15

August, and Investigative Consultants International, Inc., intentionally and repeatedly gave Defendants unreasonable and highly objectionable publicity that attributed Plaintiffs with insurance fraud, and political and religious beliefs that are false, and thereby placed Plaintiffs before the public in a false light and position.

59.  The Defendants and the Defendant, Lori Ann Vendetti, individually, and their agents, attorneys, employees, and/or investigators, including, but not limited to Michael "Doc" Black, Craig Riesterer, Robert Zehrung, Brandon August, and Investigative Consultants International, Inc., knew that their course of conduct would cause the Plaintiffs to suffer substantial emotional distress and, despite that knowledge, carried through with the efforts to stalk the Plaintiffs, invade their privacy and cause them further harm than the harm Defendants already inflicted upon Plaintiffs when Defendants wrecked *The City Of New Orleans*.

60.  The Defendants and the Defendant, Lori Ann Vendetti, individually, and their agents, attorneys, employees, and/or investigators have violated Plaintiffs' right of privacy guaranteed under Article 1, Section 1, of the California Constitution, and the common law.

**SIXTH CAUSE OF ACTION**
**Stalking**

61.  Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

62.  The Defendants and the Defendant, Lori Ann Vendetti, individually, and their agents, attorneys, employees, and/or investigators, including, but not

Complaint                                      16

limited to Michael "Doc" Black, Craig Riesterer, Robert Zehrung, Brandon August, and Investigative Consultants International, Inc., engaged in a pattern of conduct the intent of which was to follow, alarm, or harass Plaintiffs and, as a result of such conduct, Plaintiffs Charles Lortz and Sheila Doyle reasonably feared for their safety, the safety of their two children and the safety of Ms. Doyle's elderly mother.

63.  The Defendants and the Defendant, Lori Ann Vendetti, individually, and through their agents, attorneys, employees, and/or investigators, including, but not limited to Michael "Doc" Black, Craig Riesterer, Robert Zehrung, Brandon August, and Investigative Consultants International, Inc., made credible threats verbally, in writing and/or implied by a pattern of conduct, or a combination of verbal or written statements and conduct, made with the intent and apparent ability to carry out the threat so as to cause Plaintiffs, who are the targets of such threats to reasonably fear for their safety and the safety of Plaintiffs' children and Ms. Doyle's elderly mother.

64.  The Defendants and the Defendant, Lori Ann Vendetti, individually, and through their agents, attorneys, employees, and/or investigators, including, but not limited to Michael "Doc" Black, Craig Riesterer, Robert Zehrung, Brandon August, and Investigative Consultants International, Inc., harassed Plaintiffs by means of a knowing and willful course of conduct directed at Plaintiffs and their immediate family which seriously alarms, annoys, torments, or terrorizes Plaintiffs and their immediate family, which serves no legitimate purpose and is such as would cause a reasonable person to suffer substantial emotional distress, and has actually caused substantial emotional distress to Plaintiffs.

65.  The activities of Defendants and the Defendant, Lori Ann Vendetti, individually, and their agents, attorneys, employees, and/or investigators,

Complaint                                    17

including, but not limited to Michael "Doc" Black, Craig Riesterer, Robert Zehrung, Brandon August, and Investigative Consultants International, Inc., violate California Civil Code §1708.7.

66.  Plaintiffs have no adequate remedy at law.

### SEVENTH CAUSE OF ACTION
#### Nuisance

67.  Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

68.  The activities of Defendants and the Defendant, Lori Ann Vendetti, individually, and their agents, attorneys, employees, and/or investigators, including, but not limited to Michael "Doc" Black, Craig Riesterer, Robert Zehrung, Brandon August, and Investigative Consultants International, Inc., constitute conducting or maintaining a public and private nuisance for the purpose of willfully, maliciously and repeatedly following, harassing, and stalking Plaintiffs and invading Plaintiffs' privacy and publishing to Plaintiffs' neighbors and others that Defendants were investigating a case of "insurance fraud" on the part of Plaintiffs, when, in fact, Defendants and their agents and investigators were fully aware that there is absolutely no evidence of any such  "insurance fraud" on the part of Plaintiffs.

69.  Defendants have threatened to and will, unless restrained by this Court, continue to maintain and conduct such public and private nuisance and to continue the acts complained of, in violation of the rights of Plaintiffs.

70.  As a proximate cause of Defendants' public and private nuisance, Plaintiffs have been hurt and injured, all of which injuries have caused, and continue to cause, Plaintiffs great mental, physical, and nervous pain and suffering, and general damages in an amount according to proof.

Complaint                                                18

71.  In maintaining their public and private nuisance, the Defendants, and each of them, are acting with full knowledge of the consequences and damage being caused to Plaintiffs, and their conduct is willful, oppressive, and malicious, and, accordingly, Plaintiffs are entitled to punitive damages against Defendants in an amount to determined at trial of this action.

72.  Plaintiffs have no adequate remedy at law.

## EIGHTH CAUSE OF ACTION
### Defamation

73.  Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

74.  Plaintiffs have lived and worked in Murphys, California, for more than ten (10) years and at all times have enjoyed a good reputation both generally and in their occupations.

75.  As recently as the Christmas Holidays, 2007, the Defendants and the Defendant, Lori Ann Vendetti, individually, sent their agents, attorneys, employees, and/or investigators, including, but not limited to, Michael "Doc" Black, Craig Riesterer, Robert Zehrung, Brandon August, and Investigative Consultants International, Inc., to Murphys, California and at least one of them contacted neighbors of the Plaintiffs and told and published to Plaintiffs' neighbors that Defendants were investigating a case of "insurance fraud" on the part of Plaintiffs.

76.  Defendants and their agents and investigators were fully aware that there is absolutely no evidence of any such  "insurance fraud" on the part of Plaintiffs when they published this information to Plaintiffs' neighbors and others.

77.  Defendants' published false statements about Plaintiffs' "insurance

Complaint                                           19

fraud" injures the Plaintiffs in their occupation because it falsely portrays Plaintiffs as dishonest and/or immoral.

78.  Defendants' published false statements about Plaintiffs' "insurance fraud" is defamatory *per se* because it falsely charges Plaintiffs with criminal conduct and dishonesty.

79.  As a proximate result of the Defendants' publication of the above defamatory statements, Plaintiffs have suffered loss of their reputation, shame, mortification, and hurt feelings, all to their general damage.

80.  The above-described publication by Defendants was published by the Defendants with malice, oppression, and/or fraud, and thus Plaintiffs seek an award of punitive damages.

## NINTH CAUSE OF ACTION
### Malicious Defense

81.  Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

82.  Defendants' activities complained of herein constitute a malicious defense against Plaintiffs' injury and damage claims which has harmed and, unless enjoined, will continue to harm to Plaintiffs, as set forth herein.

83.  As a proximate cause of Defendants' malicious defense against Plaintiffs' injury and damage claims, Plaintiffs have been hurt and injured, all of which injuries have caused, and continue to cause, Plaintiffs and their immediate family great mental, physical, and nervous pain and suffering, such that Defendants' willful course of conduct seriously alarms, annoys, torments, or terrorizes Plaintiffs and their immediate family, and such conduct serves no

Complaint                                    20

legitimate purpose, and is such as would cause a reasonable person to suffer substantial emotional distress, and has actually caused substantial emotional distress to Plaintiffs.

84.   In maintaining their malicious defense against Plaintiffs' injury and damage claims, the Defendants, and each of them, are acting with full knowledge of the consequences and damage being caused to Plaintiffs, and their conduct is willful, oppressive, and malicious, and, accordingly, Plaintiffs are entitled to punitive damages against Defendants in an amount to determined at trial of this action.

85.   Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1.      For temporary, preliminary and permanent injunctions enjoining Defendants from invasions of privacy, stalking, public and private nuisance, and defamation Plaintiffs and/or assisting, aiding or abetting any other person or business entity from engaging or performing the activities referred to herein;

2.      For an award of general damages and special damages according to proof in an amount not less than Five Million Dollars ($5,000,000.00);

3.      For an award of punitive damages according to proof in an amount not less than five times the amount of general and special damages awarded;

4.      For costs of suit incurred herein;

5.      For prejudgment and post judgment interest; and

9.      For such other and further relief as the court deems just and proper.

Complaint                                        21

**JURY DEMAND**

Plaintiff respectfully demands trial by jury of all issues in this case.

Respectfully submitted,

Dated: June 29, 2008_____   /s/Michael James Cronen
Michael James Cronen

ZIMMERMAN & CRONEN, LLP
1330 Broadway, Suite 710
Oakland California 94612
telephone:510.465.0828
facsimile:510.465.2041
e-mail: mcronen@zimpatent.com

Wayne E. Ferrell, Jr.
ATTORNEY AT LAW
405 Tombigbee Stree t
Jackson, Mississippi 39225-4448
telephone:601.969.4700
facsimile:601.969.7514
e-mail: wferrell@airlawonline.com

Attorneys for Plaintiffs

Complaint                                22

EXHIBIT A

NATIONAL RAILROAD PASSENGER CORPORATION
60 West 31st Street, New York, NY 10001



October 28, 2004

Sheila Doyle
3500 Skunk Ranch Road
P.O. Box 1785
Murphys, CA  95247

RE:  Incident of 4/7/04
File:  91994-001-LAV

Dear Sheila:

It was nice talking with you today.  I have enclosed a medical authorization for you to sign.  This form will allow me to obtain the records relating to this incident, which will assist me in evaluating your claim.  You need to complete the lines numbered 1 –5 with those names and addresses of the facilities you went to, such as the hospital, rehab, doctor, etc., regarding this incident.  I have enclosed two forms, just in case the five lines are not sufficient.

As we discussed, I will await your records on your wage loss, out of pocket expenses and Charlie's business loss information.  Once you and Charlie have sat down and figured out what your losses are, please provide me with an amount you feel would be fair compensation for your total claim.  I am confident that we can mutually agree on a figure to resolve your claim without attorney involvement, but as I promised, if for some reason we cannot, I will be honest and tell you.

I want to thank you for telling me that you have talked with attorneys and also for giving me the opportunity in resolving your claim prior to retaining one.

Should you have any questions about the enclosed forms or anything else, please call me at either of the below listed numbers.

Sincerely,

Lori Ann Vendetti
Senior Claim Rerpesentative
212-630-7164
800-424-7960

Enclosures

January 21, 2005

Lori Ann Vendetti
National Railroad Passenger Corp.
400 West 31st Street
New York, NY 10001

RE:  Incident of 4/7/04

File:  91994-001-LAV

Dear Lori,

It is very good to be starting a new year!  I am more then glad to be done with 2004.  I am sorry that it has taken me so long to get this information to you, but I still function pretty slowly.

Unfortunately, I was not able to return to work at this time.  The four days that I worked prior to Christmas were extremely difficult, and I'm afraid, not conducive to my recovery.

I am enclosing information regarding my wage loss, insurance costs accrued because I was not working, out of pocket expenses and Charlie's business losses.  This information is accurate to the best of our current knowledge.  My wage loss records include only the time through 11/04.  I am also including a copy of my current contract, as it does not seem likely that I will return to work this year.

Charlie and I have discussed this, and we feel it would be more appropriate for Amtrak to first make us an offer that you feel would fairly compensate us for our losses and also for the other categories that need to be considered .

We too have high hopes that we will be able to resolve this fairly and simply.  Please do not hesitate to call me with any questions you may have.     We look forward to seeing you.  It will be nice to see you from a vertical position!

Sincerely

Sheila Doyle

June 11, 2005

Lori Ann Vendetti
Senior Claims Representative
National Railroad Passenger Corp
400 W. 31ª
New York, NY 10001

Dear Lori,

I wrote to you with our latest request in the middle of May and as yet have received no reply.
I hope that you received this letter, but if by any chance you did not, please let me know and I
will be glad to send you a copy.

Hope your summer is starting off well.  Looking forward to hearing from you.

Sincerely,


Sheila Doyle



NATIONAL RAILROAD PASSENGER CORPORATION
400 West 31st Street, New York, NY 10001

June 22, 2005

Sheila Doyle
3500 Skunk Ranch Road
P.O. Box 1785
Murphys, CA 95247

**RE: Incident of 4/6/04**
**File: 91994-036-LAV**

Dear Sheila:

This will confirm receipt of your letter dated May 17th and your demand of $1,585,000.00, as well as our conversation of June 17th. As I informed you, unfortunately Amtrak cannot offer you any amount close to your demand figure. As I was explaining in our conversation, Amtrak could offer you a Structured Settlement, which is a process where Amtrak puts money into an annuity with an A+ rated insurance company, which then invests the money and pays you payments over time. The benefit of an annuity is that the money you may get over time increases your overall settlement, although Amtrak initially does not pay that amount. Structure Settlements are used to try to get a claimant close to the amount they may want overtime instead of in one lump sum at time of settlement. The other big benefit is that any money you get from a Structure is not taxable. You can also invest your money yourself, but as soon as you do, it becomes taxable. The money earning interest in an annuity purchased by Amtrak or any defense company is not taxable for personal injury settlements.

One of the main reasons that I wanted to come visit the both of you to discuss settlement, was for you both to ask any questions and to have someone from the structure settlement company there as well, who is the expert and can work up a variety of proposals for you based on what your future needs may be, such as a new car, vacations, children's college, retirement, etc.

I have enclosed four different proposals, with the cost to Amtrak and the actual expected payouts you would receive during the structure period. Obviously these proposals are not etched in stone; there are many variations that can be done. Please look these over and give me a call. If you think it would be better to discuss this face to face, please let me know and I would be more then willing to come to your home and discuss further resolution of your claim with both you and Charlie.

I am confident that we can settle this matter without a long and drawn out litigation period. I look forward to hearing from you.

Sincerely,

Lori Ann Vendetti
Senior Claim Representative

NATIONAL RAILROAD PASSENGER CORPORATION
400 West 31st Street, New York, NY 10001

July 8, 2005



Sheila Doyle
3500 Skunk Ranch Road
P.O. Box 1785
Murphys, CA  95247

> **RE:  Incident of 4/6/04**
> **File:  91994-036-LAV**

Dear Sheila:

   I received your voicemail message of July 7th advising that before you can continue negotiations you required a number from Amtrak.  I apologize if my prior letter was unclear regarding Amtrak's offer.  The structure settlement proposals I sent you had three figures, "Guaranteed Payout" "Expected Payout" and "Cost".  The "Cost" figure on each of the individual proposals would be Amtrak's current offers.  The figures ranged from $266, 215.52 - $303,864.46.  But to make it clear *Amtrak is currently offering you the higher end number, which is $303,846.46.*  As you can see from the structure settlement proposals, if you decide to use that form of settlement, you can eventually have an expected payout of $522,000.00.  As I explained in my prior correspondence, there are many variations to structure settlements and they can be worked out to meet future needs that you and Charlie may have.

   Please be advised that I am on vacation next week and will return to the office on Monday July 18th.  If you need to discuss this matter before then, you can always call my cell phone at 973-699-0375.

                    Sincerely,

                    Lori Ann Vendetti
                    Senior Claim Representative
                    212-630-7164
                    212-630-6203 (fax)

July 11, 2005

Lori Ann Vendetti
Amtrak Claims Services
400 W. 31ˢᵗ Street, 4ᵗʰ Floor
New York, NY  10001

                              RE:  Incident of 4/6/04
                              File:  91994-036-LAV


Dear Lori Ann,

This is in confirmation of my phone message of 7/8/05.  As I stated, at this time we feel that we can go no further in negotiation until we receive from you in writing, an actual dollar amount of your offer.

I am enclosing, for your information, a reprint from the Jackson Clarion-Ledger.



Sincerely,



Sheila Doyle

July 18, 2005


Lori Ann Vendetti

Amtrak Claims Services

400 W. 31st Street, 4th Floor

New York, NY 10001


                                        RE:  Incident of 4/6/04

                                        File:  91994-036-LAV



Dear Lori Ann,


I find myself at a loss as to how to respond to your last two letters.  You talk to me about *new cars* and *vacations*, when I don't even have an income!  My surgeon says that I should not expect any major improvements in my chronic pain and lack of stamina in the foreseeable future.  As I contributed a substantial amount to the family's income, including our medical insurance, this is a loss to me and my family that cannot be fixed with new cars.


Unless you are able to make a significant increase in the amount of your offer, I am afraid that we will have no other choice but to retain an attorney.


Sincerely,



Sheila Doyle

July 28, 2005

Lori Ann Vendetti
Amtrak Claims Services
400 W. 31ST Street, 4th Floor
New York, NY 10001

>            **RE: Incident of 4/6/04**
>            **File: 91994-036-LAV**
>            **For Settlement Purposes Only**

Dear Lori Ann,

As per our telephone conversation of 7/22/05, I have discussed this with Charlie, and we
are willing to make another offer at this time. I am sure you realize that we are very far
apart on this. Your offers to date to not come close to meeting my loses, which arose
from this derailment. Consequently, there is not a great deal of room for movement on
our part. Our new demand number is $1,378,000.00

We can't help but be very disappointed with the attitude that Amtrak is taking in this
situation. We feel that we have been trying extremely hard to be fair and would like to
see Amtrak reciprocate in kind.

Our position continues to be that all offers need to be made in writing.

Sincerely

Sheila Doyle

NATIONAL RAILROAD PASSENGER CORPORATION
400 West 31st Street, New York, NY 10001



August 30, 2005

Sheila Doyle
P.O. Box 1785
Murphys, CA 95247

> **RE: Incident of 4/6/04**
> **File: 91994-036-LAV**
> **_For Settlement Purposes Only_**

Dear Sheila:

I am in receipt of your letter dated August 13, 2005. It is obvious that we have differences of opinions regarding your claim.

Amtrak has made you a very fair offer of $303,846.46. Should you be willing to come off your demand of $1,378,000.00, to a figure that is much closer to our number, we may be able to continue negotiations and be able to resolve this matter.

The invitation is open for me to come out to California and sit down with the both of you face-to-face and try to continue talking. You may think it will be a waste of time, but you would be amazed how face-to-face negotiations can resolve a lot of issues. Writing leaves out the human factor and is extremely informal! As information, I will be on vacation in the San Francisco and Napa Valley area on November 6 & 7 and can meet with you then if you like. I can also come out sooner should you decide a meeting would be beneficial.

Please let me know if you and Charlie are willing to continue negotiating your claim and provide me with a revised demand figure.

Sincerely,

Lori Ann Vendetti
Senior Claim Representative