IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA DOYLE, et al., | CASE NO. CV F 08-0971 LJO SMS |
| Plaintiff, | **ORDER ON DEFENDANTS' SANCTIONS MOTION** |
| vs. | (Docs. 53, 58.) |
| ILLINOIS CENTRAL RAILROAD COMPANY, et al, | |
| Defendants. / | |

**INTRODUCTION**

Several defendants[1] seek to impose a $5,240.60 sanction against counsel for plaintiffs Sheila Doyle ("Ms. Doyle") and Charles Lortz (collectively "plaintiffs'") for defense and related costs to dismiss plaintiffs' malicious defense claim as unrecognized under California law. Plaintiffs characterize defendants' sanctions motion as an attempt "to chill zealous legal representation." This Court considered the Amtrak defendants' sanctions motion on the record and VACATES the February 4, 2009 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court IMPOSES a $2,380 sanction against plaintiffs' counsel.

---

[1] The defendants seeking the sanction are National Railroad Passenger Corporation ("Amtrak"), Lori Ann Vendetti, Investigative Consultants International, Inc., Brandon August and Craig Reisterer (collectively the "Amtrak defendants").

1

## BACKGROUND

### Plaintiffs' Underlying Train Accident And Judgment

Plaintiffs are married and reside in Murphys, California. On April 6, 2004, plaintiffs were passengers on an Amtrak train and were injured when the train derailed on tracks several miles north of Jackson, Mississippi and owned by defendant Illinois Central Railroad Company ("Illinois Central"). Ms. Doyle suffered a burst T-12 vertebrae and head and other injuries.

Plaintiffs pursued an underlying Mississippi state court action against Illinois Central and two of its maintenance and way department employees[2] and obtained a nearly $2 million dollar judgment.[3]

### Plaintiffs' Dismissed Malicious Defense Claim

In this action, plaintiffs pursue claims, the gist of which are that the Amtrak defendants and Illinois Central conspired to defraud and harass plaintiffs to prevent and delay plaintiffs to pursue claims arising from the train derailment. Plaintiffs accuse the Amtrak defendants of spying on and stalking plaintiffs, invading plaintiffs' privacy, trespassing on plaintiffs' property, and falsely accusing Ms. Doyle of insurance fraud. Plaintiffs' former first amended complaint ("FAC")[4] alleged 10 tort and breach of contract causes of action, including a (ninth) malicious defense cause of action that defendants' activities "constitute malicious defense against Plaintiffs' injury and damage claims."

The Amtrak defendants filed three separate F.R.Civ.P. 12(b)(6) motions to dismiss plaintiffs' malicious defense claim as unrecognized under California law. Plaintiffs, through their counsel Michael James Cronen ("Mr. Cronen"), opposed the F.R.Civ.P. 12(b)(6) motions and noted that defendants had pursued affirmative defenses in the underlying Mississippi state court action to deny that plaintiffs are entitled to recover, to claim lack of responsibility for plaintiffs' claims, and to seek a setoff or reduction

---

[2] Illinois Central and its defendant employees in the underlying Mississippi state court action will be referred to collectively as the "Illinois Central defendants."

[3] Amtrak was not a defendant in the underlying Mississippi state court action but provided a defense to the Illinois Central defendants.

[4] This Court's November 18, 2008 order required plaintiffs to file a second amended complaint in response to Amtrak's F.R.Civ.P. 12(e) motion. Although the second amended complaint is operative, the FAC is the subject of the Amtrak defendants' sanctions motion.

"[t]o the extent Defendants or anyone on their behalf paid advancements to Plaintiffs and/or medical expenses." Plaintiffs' opposition papers stated that defendants "**maliciously filed cross-pleadings** and slanderous allegations, trespass, fraud, hate speech, etc., all aimed at causing Plaintiffs mental anguish, apprehension and fear, to get Plaintiffs to buckle under the pressure to minimize, or avoid entirely, paying Plaintiffs' medical bills and other damages." (Bold added.) Plaintiffs' opposition papers further stated that defendants "maliciously defended against Plaintiffs' claims **by filing cross-pleadings and allegations against Plaintiffs and requesting affirmative relief against Plaintiffs** in the form of a **claim** for a 'setoff or reduction against any recovery of the Plaintiffs' (NINTH DEFENSE), a return to Defendants of 'paid advancements to Plaintiffs and/or medical expenses' paid by anyone on Defendants' behalf' (NINTH DEFENSE), and a judicial determination and declaration that Defendants' [sic] are 'not . . . liable for any of the Plaintiffs' alleged injuries' (SECOND, FIFTH, SEVENTH DEFENSES)." (Bold added.)[5] The FAC failed to allege that the Illinois Central defendants filed cross-pleadings against plaintiffs.

The Amtrak defendants responded that the Illinois Central defendants "never filed a cross-pleading" in the underlying Mississippi state court action and "simply asserted affirmative defenses" to "deny liability, allege that the subject train accident was not reasonably foreseeable, allege that there were pre-existing injuries, and request that [the] Court prevent plaintiffs from obtaining a double recovery" for Amtrak's advancements for plaintiffs' medical expenses. The Amtrak defendants further noted that the court in the underlying Mississippi state court action did not rule on the Illinois Central defendants' (ninth) setoff defense for Amtrak's advancements for plaintiffs' medical expenses.

The Amtrak defendants characterized plaintiffs' malicious defense claim as "akin to malicious prosecution, only that [defendants] committed such tort" in defending plaintiffs' personal injury claims. The Amtrak defendants argued that California does not recognize a malicious defense tort and relied on the following from *Bertero v. National General Corp.*, 13 Cal.3d 43, 52-53, 118 Cal.Rptr. 184 (1974), where the California Supreme Court addressed a malicious prosecution claim arising from a cross-action:

---

[5] Plaintiffs also referenced a post-trial defense motion to address medical lienholder rights.

3

> We likewise are not persuaded by defendants' claim that their cross-pleading was merely defensive and that a penalty should not be imposed for aggressively defending against the charges asserted in a complaint. Defendants invoke a line of cases headed by *Eastin v. Bank of Stockton*, *supra,* 66 Cal. 123, 4 P. 1106, in which various courts have refused to recognize a tort of **malicious defense**. (*See Ritter v. Ritter* (1943) 381 Ill. 549, 46 N.E.2d 41 and cases cited therein.) **We do not propose to establish such a tort** by our holding here. The *Eastin-Ritter* cases protect the **right of a defendant**, involuntarily haled into court, **to conduct a vigorous defense**.  (Bold added.)

The Amtrak defendants contended that plaintiffs' malicious defense claim failed in the absence of a cognizable legal theory to support it.

This Court agreed with the Amtrak defendants and explained in its November 5, 2008 order ("November 5 order"):

> Plaintiffs attempt to transform assertion of affirmative defenses into a claim for affirmative relief to support a malicious prosecution type claim. However, the California Supreme Court concluded that "a cause of action for malicious prosecution lies when predicated on a claim for **affirmative relief** asserted in a cross-pleading even though intimately related to a cause asserted in the complaint." *Bertero*, 13 Cal.3d at 53, 118 Cal.Rptr. 184. (Bold added.) Nothing suggests that defendants sought "affirmative relief in a cross-pleading." An affirmative defense is a **defense**, not a claim for affirmative relief.  Plaintiffs' claims that the affirmative defenses were "cross-pleadings" and a misuse of judicial process are unsubstantiated. Defendants' pursuit of affirmative defenses is not subject to a malicious prosecution type tort. (Bold added.)

This Court dismissed with prejudice plaintiffs' malicious defense claim.

**The Amtrak Defendants' Unfiled F.R.Civ.P. 11(c)(2) Sanctions Motion**

On November 4, 2008, the Amtrak defendants served on Mr. Cronen a F.R.Civ.P. 11(c)(2) motion to impose sanctions for Mr. Cronen's pursuit of the malicious defense claim and opposition to the Amtrak defendant's motion to dismiss the claim. Mr. Cronen's November 6, 2008 letter to defense counsel characterized the F.R.Civ.P. 11(c)(2) motion as "baseless" and threatened a counter-motion. The November 5 order was issued prior to expiration of F.R.Civ.P. 11(c)(2)'s 21-day safe harbor period to render the F.R.Civ.P. 11(c)(2) motion moot.

**The Amtrak Defendants' Current Sanctions Motion**

Pursuant to this Court's inherent power and 28 U.S.C. § 1927, the Amtrak defendants seek to impose a $5,240.60 sanction against Mr. Cronen to prepare their F.R.Civ.P. 12(b)(6) motions to dismiss the malicious defense claim, F.R.Civ.P. 11(c)(2) motion, and this current sanctions motion. The Amtrak defendants seek sanctions on grounds that to oppose dismissal of the malicious defense claim, Mr.

Cronen:

1. Misrepresented that the Illinois Central defendants had filed cross-actions against plaintiffs in the underlying Mississippi state court action in that the Illinois defendants filed only affirmative defenses;

2. Misrepresented that the Mississippi state court ruled in disfavor of the Illinois defendants on their affirmative setoff defense in that the court never ruled on the merits of the defense; and

3. Misconstrued the California Supreme Court's holding and comments in *Bertero* to advocate an unrecognized malicious defense claim.

To oppose imposition of sanctions, Mr. Cronen notes that he concluded from his research and investigation that a malicious defense claim "should cover the malicious misuse of legal proceedings in the conduct of a defense" in that *Bertero* "broadly emphasized the public policy concerns against malicious use of legal proceedings." Mr. Cronen further claims that he determined that "*Bertero* and earlier California cases did not consider the merits of the tort of malicious defense under California law." In his declaration, Mr. Cronen states:

> Based upon the best of Plaintiffs' counsel's knowledge, information and belief, Plaintiffs' counsel made a good faith determination, after an inquiry involving many discussions among counsel and many hours of my own legal research, that this claim and the related factual and legal contentions had evidentiary support and were warranted, either by existing law or a non-frivolous argument for the extension, modification, or reversal of existing law, or the establishment of new law.
> . . .
> Plaintiffs' counsel did not present Plaintiffs' previous [malicious defense] Ninth Cause of Action for any improper purpose, such as to harass Defendants, and this cause of action did not cause any unnecessary delay as no trial date has been set in this matter. Plaintiffs' counsel also did no [sic] present Plaintiffs' previous Ninth Cause of Action to needlessly increase the cost of litigation.

This Court next turns to the merits of defendants' sanctions motion.

## DISCUSSION

### Court Authority

This Court has a duty to supervise the conduct of attorneys appearing before it. *Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996); *Lokary v. Kayfetz*, 974 F.2d 1166, 1170 (9th Cir.), *cert. denied, sub. nom., Pacific Legal Foundation v. Kayfetz*, 508 U.S. 931, 113 S.Ct. 2397 (1993); *Trust*

*Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). The Ninth Circuit Court of Appeals has observed:

> Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised. It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar. The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession.

*Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322, 1324-1325 (9th Cir.), *cert. denied sub nom. Shell Oil Co. v Gas-A-Tron of Ariz.*, 429 U.S. 861, 97 S.Ct. 164 (1976).

The determination to sanction is subject to a court's sound discretion. *See Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir. 1996); *Wages v. Internal Revenue Service*, 915 F.2d 1230, 1235 (9th Cir.), *cert. denied*, 489 U.S. 1096, 111 S.Ct. 986 (1991); *Erickson v. Newmar Corp.* 87 F.3d 298, 303 (9th Cir. 1996). "For a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 490 (9th Cir.) (internal quotations omitted), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 757 (1990).

To address sanctions, this Court looks to its Local Rules, 28 U.S.C. § 1927 and its inherent powers.

**Local Rules**

Federal judges have broad powers to impose sanctions for abuses of process. *Gas-A-Tron*, 534 F.2d at1324-1325. The sources of power to sanction include federal statutes and procedural rules, local rules, and a court's inherent power. For instance, this Court's Local Rule 11-110 provides: "The failure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule or within the inherent power of the Court."

This Court's Local Rule 83-184(a) addresses attorney discipline and provides:

> In the event any attorney subject to these Rules engages in conduct that may warrant discipline or other sanctions, any Judge or Magistrate Judge may initiate proceedings for contempt under 18 U.S.C. § 401 or Fed. R. Crim. P. 42,[6] or may, after

---

[6] 18 U.S.C. § 401 authorizes a fine or imprisonment, at a court's discretion, for contempt of its authority, and for misbehavior of any person in the court's presence "or so near thereto as to obstruct the administration of justice." F.R.Crim.P. 42(b) punishes as criminal contempt conduct which a "judge saw or heard . . . or [] committed in the actual

reasonable notice and opportunity to show cause to the contrary, take any other appropriate disciplinary action against the attorney. In addition to or in lieu of the foregoing, the Judge or Magistrate Judge may refer the matter to the disciplinary body of any Court before which the attorney has been admitted to practice.

Neither this Court's Local Rules nor the Federal Rules of Civil Procedure clearly define "other appropriate disciplinary action" for attorney conduct short of criminal contempt. Nonetheless, federal judges have an "arsenal of sanctions" to impose for unethical behavior and including monetary sanctions, contempt, dismissal and disqualification of counsel. *Erickson*, 87 F.3d at 303. The California Rules of Professional Conduct and the State Bar Rules of California may also provide appropriate sanctions. *See* Local Rule 83-180(e) (adopting California Rules of Professional Conduct and applicable court decisions as standards of professional conduct in this district).

Under California law, an attorney may use only methods "as are consistent with truth, and never seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." Cal. Bus. & Prof. Code, § 6068(d). "In presenting a matter to a tribunal, a member: (A) Shall employ, for the purpose of maintaining the causes confided to the member such means only as are consistent with truth; (B) Shall not seek to mislead the judge, judicial officer, or jury by an artifice of false statement of fact or law; (C) Shall not intentionally misquote to a tribunal the language of a book, statute, or decision . . ." Cal. Rules of Professional Conduct, Rule 5-200.

## 28 U.S.C. § 1927

28 U.S.C. § 1927 ("section 1927") addresses counsel's liability for excessive costs and provides: "Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The decision to award section 1927 sanctions rests in a court's sound discretion. *Wages*, 915 F.2d at 1235. A section 1927 sanction requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (9th Cir. 1998) ("willful continuation of a suit known to be meritless" satisfies section 1927).

---

presence of the court."

Section 1927 "applies only to unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Management Co. Sec. Litig. (Keegan Management Co. v. Moore)*, 78 F.3d 431, 435 (9th Cir. 1995). "Vexatious" is defined as "lacking justification and intended to harass." *Overnight Transp. Co. v. Chicago Ind. Tire Co.*, 697 F.2d 789, 795 (7th Cir. 1983).

Section 1927 sanctions must be based on a finding that the sanctioned attorney acted in subjective bad faith. *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983); *New Alaska Development Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990) (citing *Cunningham v. County of Los Angeles*, 879 F.2d 481, 490 (9th Cir. 1988)); *New Alaska*, 869 F.2d at 1306; *see Keegan Management*, 78 F.3d at 436; *Salstrom v. Citicorp Credit Serv., Inc.*, 74 F.3d 183 (9th Cir.), *cert. denied, sub nom.*, *Webb v. Citicorp Credit Serv. Inc.*, 117 S.Ct. 60 (1996); *MGIC Idemnity v. Moore*, 952 F.2d 1120 (9th Cir. 1991); *Toombs v. Leone*, 777 F.2d 465 (9th Cir. 1985) (court need not make express findings as to counsel's state of mind because record contained sufficient evidence to support decision); *see also Byrne v. Nezhat*, 261 F.3d 1075, 1106 (9th Cir. 2001) ("under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation"); *Shafii v. British Airways, PLC*, 83 F.3d 566, 569 (2nd Cir. 1996) (sanction warranted if meritless actions lead to conclusion that they were undertaken for improper purposes, such as delay).

In *Blodgett*, 709 F.2d at 610-611, the Ninth Circuit Court of Appeals explained section 1927's limitations:

> Section 1927 only authorizes the taxing of excess costs arising from an attorney's unreasonable and vexatious conduct; it does not authorize imposition of sanctions in excess of costs reasonably incurred because of such conduct. Similarly, cases that have considered the district court's inherent power to sanction attorneys for litigating in bad faith have related such sanctions to the amount of fees incurred by the opposing counsel, and have not based sanctions on increased costs experienced by the court.

### **Inherent Power**

In addition, federal courts have inherent power to impose sanctions for attorney misconduct and such sanctions include an award of attorney's fees, against attorneys and parties for "bad faith" conduct or "willful disobedience" of a court order. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123,

2132 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-766, 100 S.Ct. 2455, 2463-2464 (1980); *In re Akros Installations, Inc.*, 834 F.2d 1526, 1532 (9th Cir. 1987); *see Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3rd Cir. 1995). A district court is also inherently empowered to sanction for "willfulness or fault of the offending party." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988); *Unigard Sec. Ins. v. Lakewood Engineering & Mfg.*, 982 F.2d 363, 368, n. 2 (9th Cir. 1992). A district court has inherent power to "impose sanctions for discovery abuses that may not be a technical violation of the discovery rules." *Halaco*, 843 F.2d at 380; *Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1557-1558 (9th Cir. 1996). However, recklessness "is an insufficient basis for sanctions under a court's inherent power." *Keegan Management*, 78 F.3d at 436. Sanctions imposed under a court's inherent powers require a finding of bad faith. *Chambers*, 501 U.S. at 55, 111 S.Ct. 2123.

A court's inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43, 111 S.Ct. at 2132. Such inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *Chambers*, 501 U.S. at 42; 111 S.Ct. at 2123.

"Bad faith" means a party or counsel acted "vexatiously, wantonly or for oppressive reasons." *Chambers*, 501 U.S. at 45-46, 111 S.Ct. at 2133; *see Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-259, 95 S.Ct. 1612, 1622 (1975). Bad faith "does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*, the assertion of a colorable claim will not bar assessment of attorneys' fees." *Mark Ind., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir. 1995) (internal quotation marks and citations omitted). Bad faith is tested objectively. "[A] district court's finding of bad faith or the absence of bad faith in a particular case is a factual determination and may be reversed only if it is clearly erroneous." *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3rd Cir. 1986); *see Baker v. Cerberus, Ltd.,* 764 F.2d 204, 210 (3rd Cir. 1985); *Perichak v. International Union of Elec. Radio*, 715 F.2d 78, 79 (3rd Cir. 1983). There must be "some indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay." *Ford,* 790 F.2d at 347.

When exercising inherent powers to sanction, a court must exercise discretion to fashion an appropriate remedy. *Erickson*, 87 F.3d at 303 (citing *Chambers*, 501 U.S. at 44-45.) When exercising discretion under its inherent sanction powers, a court is guided by considerations applicable to sanctions under the Federal Rules of Civil Procedure. Factors to consider include:

1. The nature and quality of the conduct at issue;
2. As between attorney and client, who is responsible for the culpable conduct;
3. Whether there was a pattern of wrongdoing to require a stiffer sanction;
4. The sanctioned party's ability to pay;
5. Whether the wrongdoing actually prejudiced the wrongdoer's opponent or hindered the administration of justice; and
6. The existence of mitigating factors.

*Westinghouse*, 43 F.3d at 74.

Under its inherent authority, a court may impose sanctions on counsel or a party. *See Roadway Express*, 447 U.S. at 767, 100 S.Ct. 2455. An attorney's fee award under a court's inherent power is intended to vindicate judicial authority, not to provide a substantive remedy to an aggrieved party. "The wrong was to the court." *Mark Industries*, 50 F.3d at 733.

With the above standards in mind, this Court turns to the Amtrak defendants' grounds for sanctions and requested amount of sanctions.

### Mr. Cronen's Conduct

The Amtrak defendants argue that Mr. Cronen should be sanctioned in that prosecution of the malicious defense claim is "a wrong that should not go without a remedy." The Amtrak defendants contend that had Mr. Cronen conducted "a modicum of research," he would have been aware that California recognizes no malicious defense claim to avoid the Amtrak defendants' costs to dismiss the claim, which Mr. Cronen should have known was meritless upon the filing of the Amtrak defendants' motions to dismiss. The Amtrak defendants accuse Mr. Cronen of knowingly misrepresenting that the Illinois Central defendants had filed cross-actions against plaintiffs in the underlying Mississippi state court action given that Mr. Cronen represented plaintiffs in that action. The Amtrak defendants accuse Mr. Cronen of attempting to mislead this Court that the Mississippi state court ruled on the merits of the

Illinois Central defendants' setoff defense.

The Amtrak defendants take further issue with Mr. Cronen's treatment of the California Supreme Court's holding and comments in *Bertero*. The Amtrak defendants note that Mr. Cronen "purposefully misquoted *Bertero* in a transparent effort to save a cause of action that clearly was barred as a matter of law" in the absence of the Illinois Central defendants' cross-action against plaintiffs. The Amtrak defendants conclude that Mr. Cronen's "actions in continuing the prosecution of this cause of action served no other purpose than to unreasonably and vexatiously multiply proceedings."

Mr. Cronen appears to rely on an extension of *Bertero* to affirmative defenses in that *Bertero* "broadly emphasized the public policy concerns against malicious use of legal proceedings." Mr. Cronen appears to take refuge in that he did not intend to engage in sanctionable conduct and that his representation of plaintiffs is "zealous."

The Amtrak defendants' points are valid. Undoubtedly, plaintiffs' malicious defense claim was meritless in the absence of the Illinois defendants' affirmative cross-actions against plaintiffs in the underlying Mississippi state court action. Mr. Cronen no less gave the impression and thus represented that the Illinois Central defendants had pursued affirmative cross-actions against plaintiffs and that their affirmative setoff defense had been adjudicated against the Illinois Central defendants. The Amtrak defendants were compelled to correct Mr. Cronen's misrepresentations. Mr. Cronen's statements in his papers to oppose the Amtrak defendants' motions to dismiss were inconsistent with the truth.

But Mr. Cronen did not stop there. Mr. Cronen mangled *Bertero* to attempt to salvage an unsalvageable malicious defense claim. His conduct multiplied the proceedings to require the Amtrak defendants to pursue motions to dismiss and this sanctions motion. Neither *Bertero* nor any meaningful legal authority since *Bertero*'s 1974 publication support a malicious defense claim as Mr. Cronen propounded to render his conduct subjective bad faith and willful and the result of which vexed the Amtrak defendants. Mr. Cronen is unable to rely reasonably on this federal court to extend a matter of wouldbe California tort law. Since the malicious defense claim was meritless, and clearly so, this Court concludes that Mr. Cronen continued to pursue it and opposed its dismissal to harass the Amtrak defendants and their counsel and to burden this Court which was required to expend resources to address an untenable claim. As such, Mr. Cronen's conduct to oppose to the motion to dismiss the malicious

defense claim is sanctionable pursuant to section 1927 and this Court's inherent authority. This Court turns to amount of a sanction to impose on Mr. Cronen.

### **The Amtrak Defendants' Requested Sanction**

The Amtrak defendants seek to impose a $5,240.60 sanction against Mr. Cronen based on defense counsel's $170 hourly billing rate and comprising the following:

1. $1,240 for seven hours to prepare the moving and reply papers for the Amtrak defendants' motions to dismiss the malicious defense claim, including $50 photocopying costs;

2. $1,385 for eight hours to prepare the Amtrak defendants' F.R.Civ.P. 11(c)(2) sanctions motion (rendered moot by the November 5 order to dismiss), including $25 photocopying co

3. $2,615.60 for:
   a. Five hours to prepare the Amtrak defendants' moving papers for the current sanctions motion ($850);
   b. Two hours to review plaintiffs' opposition papers and to prepare reply papers ($340);
   c. Seven hours to travel to and from Oakland to attend a hearing on the sanctions motion ($1190);
   d. $210.60 for mileage (360 roundtrip miles multiplied by $.585 per mile); and
   e. $25 copying expenses.

Defense counsel's $170 hourly rate is reasonable to leave for determination whether defense counsel should recover all requested costs. Fees devoted to prepare the motion to dismiss papers ($1,190) and current sanctions motion papers ($1,190) are reasonable. The Amtrak defendants fail to justify recovery of fees for the F.R.Civ.P. 11(c)(2) sanctions papers given that a F.R.Civ.P. 11(c)(2) motion was rendered moot a day after the papers were served. Defense counsel will not need to attend a hearing on the current sanctions motion to eliminate fees and expenses devoted to travel. The Amtrak defendants fail to substantiate their photocopy charges. As such, a $2,380 sanction is appropriate.

Lastly, this Court construes plaintiffs' opposition papers to request that this Court to admonish defense counsel from "multiplying legal proceedings, needlessly increasing the cost of litigation,

attempting to chill zealous representation, and unnecessarily impugning the reputation and integrity of opposing counsel." Inexplicably, plaintiffs appear to attempt a "turn the tables" defense to cover up Mr. Cronen's sanctionable conduct. This Court frowns on plaintiffs' approach of a "good offense is a good defense." To date, defense counsel has defended the Amtrak defendants well within acceptable limits of advocacy, especially given plaintiffs' precarious claims and defense counsel's successful law and motion practice. This Court sees no grounds to admonish defense counsel.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court IMPOSES a $2,380 sanction and ORDERS Mr. Cronen, no later than February 20, 2009, to pay defense counsel $2,380.

IT IS SO ORDERED.

**Dated:   January 29, 2009**              /s/ Lawrence J. O'Neill
                                           UNITED STATES DISTRICT JUDGE