1

2

3

4

5

6

7                          **IN THE UNITED STATES DISTRICT COURT**

8                        **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   SHEILA DOYLE, et al.,                     CASE NO. CV F 08-0971 LJO SMS

11                 Plaintiffs,                 **ORDER ON DEFENDANT ILLINOIS
                                               CENTRAL'S MOTION TO DISMISS**
12        vs.

13   ILLINOIS CENTRAL RAILROAD
     COMPANY, et al.,
14
                  Defendants.
15   _____/

16                              **INTRODUCTION**

17           Defendant Illinois Central Railroad Company seeks to dismiss plaintiffs' complaint pursuant to

18   Fed.R.Civ.P 12(b)(2) on the grounds that this Court lacks personal jurisdiction over defendant. Plaintiffs

19   Sheila Doyle and Charles Lortz filed an opposition on December 17, 2008. Defendant Illinois Central

20   filed a reply on January 28, 2009. Pursuant to Local Rule 78-230(h), this matter is submitted on the

21   pleadings without oral argument. Therefore, the hearing set for February 4, 2009 is vacated. Having

22   considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the

23   following order.[1]

24   /////

25   /////

26   _____

27           [1] While this motion was pending as to the First Amended Complaint, plaintiffs filed a Second Amended Complaint.
     For purposes of judicial and litigation economy, the Court construes the motion as a challenge to the Second Amended
28   Complaint.

                                              1

1

**BACKGROUND**

2

**Plaintiffs' Underlying Train Accident And Claims**

3      Plaintiffs are married and reside in Murphys, California.  On April 6, 2004, plaintiffs were

4 passengers on an Amtrak train and were injured when the train derailed on tracks several miles north

5 of Jackson, Mississippi.  The tracks were owned by defendant Illinois Central Railroad Company dba

6 Canadian National, CN.[2]  Plaintiff alleges that "Defendant Canadian National owned and operated the

7 railroad tracks located in Yazoo County, Mississippi. It was also responsible for maintaining, inspecting,

8 owning, operating, repairing, rebuilding and servicing the railroad tracks and insuring that the railroad

9 tracks (located near milepost 196.5) were in serviceable condition." (Doc. 52, Second Amended

10 Complaint ¶22.)  Ms. Doyle and Mr. Lortz both suffered severe injuries as a result of the accident.

11      The gist of plaintiffs' claims is that the eight defendants in this action conspired to defraud and

12 harass plaintiffs to prevent and delay plaintiffs to pursue claims arising from the train derailment.

13 Plaintiffs allege that Illinois Central fraudulently induced plaintiffs to forego hiring an attorney based

14 on Illinois Central's repeated oral and written representations that:

15      1.      Illinois Central "will be honest and promptly and fairly pay Plaintiffs' claim, once the

16              full extent of Plaintiffs' injuries were determined";

17      2.      Illinois Central "will be honest and promptly and fairly pay Plaintiffs' claim;" and

18      3.      Illinois Central sought plaintiffs' proposal "based on what [plaintiffs'] future needs may

19              be, such as a new car, vacations, children's college, retirement, etc."

20      Plaintiffs also allege that defendant and its agents were sent to California to spy on plaintiffs,

21 video tape plaintiffs' activities and conduct surveillance of plaintiffs.  Plaintiffs allege as a result of

22 defendants' activities, plaintiffs were defamed, their privacy was invaded, they were stalked, among

23 other wrongs.  Plaintiff's complaint alleges claims for fraud, deceit, fraudulent inducement, breach of

24 contract, breach of the implied convenant of good faith and fair dealing, invasion of privacy, false light,

25 stalking, nuisance, and defamation, among other claims.

26 /////

27 ─────────────

28      [2] Plaintiff refers to defendant Illinois Central in the Second Amended Complaint as "Canadian National." Defendant Illinois Central refers to itself in its motion as "Illinois Central," and the Court will adopt this terminology.

1    In their papers in support of and in opposition to this motion, the parties mention that an

2   underlying litigation is proceeding in Mississippi.  The parties do not discuss the litigation in any

3   respect, but presumably it is to resolve liability for the train accident.

4                                    **ANALYSIS AND DISCUSSION**

5   **A.      Motion to Dismiss Pursuant to Rule 12(b)(2)**

6    Defendant moves to dismiss this action on the grounds that the Court lacks personal jurisdiction

7   over defendant pursuant to Rule 12(b)(2).

8    Fed.R.Civ.P. 12(b)(2) empowers a defendant to challenge a complaint "for lack of jurisdiction

9   over the person."  A district court's determination whether to exercise personal jurisdiction is a question

10  of law.  *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  Although

11  defendant is the moving party on the motion to dismiss, plaintiff is the party who invoked the court's

12  jurisdiction.  Therefore, plaintiff bears the burden of proof on the necessary jurisdictional facts; e.g., the

13  existence of "minimum contacts" between defendant and the forum state.  *Rio Properties, Inc. v. Rio*

14  *Int'l Interlink*, 284 F.3d at 1019.  When defendant's motion to dismiss is made as its initial response and

15  the court decides the motion without conducting an evidentiary hearing, plaintiff need only make a prima

16  facie showing that personal jurisdiction exists. *Ballard v. Savage,*65 F.3d 1495, 1498 (9th Cir. 1995).

17  A "prima facie" showing means that plaintiff has produced admissible evidence which, if believed, would

18  be sufficient to establish the existence of personal jurisdiction.  *See Harris Rutsky & Co. Ins. Services,*

19  *Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).   The complaint's uncontroverted

20  factual allegations must be accepted as true, and any factual conflicts in the parties' declarations must

21  be resolved in plaintiff's favor.  *Harris Rutsky & Co. Ins. Services, Inc.*, 328 F.3d at 1129.  To defeat

22  plaintiff's prima facie showing of jurisdiction on a Rule 12(b)(2) motion, defendants must demonstrate

23  the presence of other considerations that would render personal jurisdiction unreasonable.  *OMI*

24  *Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

25  **B.      Personal Jurisdiction**

26   Two recognized bases exist for personal jurisdiction over nonresident defendants: (1) "general

27  jurisdiction" which arises when a defendant's contacts with the forum state are so pervasive as to justify

28  the exercise of jurisdiction over the person in all matters; and (2) "specific" or "limited" jurisdiction

1   which arises out of the defendant's contacts with the forum giving rise to the subject of the litigation.

2   *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868 (1984).

3   Absent a traditional basis for jurisdiction (presence, domicile or consent), due process requires that the

4   defendant have "certain minimum contacts with (the forum state) such that the maintenance of the suit

5   does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v.*

6   *Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945).

7         **1.**      **General Jurisdiction**

8         Defendant argues that the Court does not have general jurisdiction because Illinois Central does

9   not have continuous and systematic contacts with California.  Plaintiffs argue Illinois Central's contacts

10   with California were substantial, systematic and continuous over a period of years. For example, Illinois

11   Central's railcars regularly travel within California and are stopped and brought to California rail yards.

12   Illinois Central has also entered into long-term agreements with California railroads regarding the

13   maintenance, inspection and transport of railcars owned by Illinois Central.

14         It is the nature and extent of the contacts, not a mechanical checklist, that determines whether

15   defendant's activities are "substantial" or "continuous and systematic." Longevity, continuity, volume,

16   economic impact, physical presence, and integration into the state's regulatory or economic markets are

17   among the indicia of such a presence. *Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F3d 1163, 1172 (9th

18   Cir. 2006).  For general (unlimited) jurisdiction, a higher level of "contacts" with the forum state is

19   required to support local jurisdiction ("fair play" concept, above). *See Data Disc, Inc. v. Systems*

20   *Technology Assocs., Inc.*, 557 F2d 1280, 1287 (9th Cir. 1977).  This broad basis for jurisdiction is

21   usually limited to large companies doing a large amount of business locally on a regular basis ... and

22   such companies rarely contest personal jurisdiction. *See Amoco Egypt Oil Co. v. Leonis Navigation Co.,*

23   *Inc.,* 1 F3d 848, 851, fn. 3 (9th Cir. 1993).

24         Here, the only evidence of "systematic" contacts is the contracts Illinois Central has with other

25   rail roads.  The evidence submitted as to Illinois Central is that it has contracts with other railroads

26   which use its railcars and those other entities have custody and control of its railcars.  (Doc. 50, Novak

27   Decl. ¶ 7-8.) These contracts with other rail roads do not raise Illinois Central's contacts with California

28   to the systematic, higher level of contacts with Calfiornia which warrant imposing jurisdiction for any

1    and all activity.  Thus, the Court finds that plaintiffs have failed to carry their burden that general

2    jurisdiction exists over defendant Illinois Central.

3            **2.        Limited Jurisdiction**

4            The focus then turns to whether this Court has "specific" or "limited" jurisdiction arising from

5    Illinois Central's contacts with California giving rise to the subject of this action.

6            Defendant argues that specific jurisdiction does not exist because it did not purposefully avail

7    itself of California law. Defendant argues that plaintiffs' injuries are not related to any contacts with the

8    state of California.  Plaintiff argues, however, that over a two year period, Illinois Central orchestrated,

9    arranged and conducted activities in which defendant hired California residents to conduct surveillance

10   activities of plaintiffs and during which Illinois Central or its agents harassed and defamed plaintiffs,

11   and invaded their privacy, among other things.  (Doc. 59, Plaintiffs' Opposition p.10.)

12           Even if a nonresident defendant's contacts with the forum state are not sufficiently "continuous

13   and systematic" for general jurisdiction, the nonresident defendant may be subject to jurisdiction on

14   claims related to its activities or contacts there.  Whether limited jurisdiction lies "turns on the nature

15   and quality of the defendant's contacts in relation to the cause of action." *Data Disc, Inc. v. Systems*

16   *Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).  The Ninth Circuit uses a three-part

17   test to determine whether the district court may exercise specific jurisdiction over a nonresident

18   defendant:

19           (a)    The nonresident defendant must do some act or consummate some transaction
                    with the forum or perform some act by which he purposefully avails himself of
20                  the privilege of conducting activities in the forum, thereby invoking the benefits
                    and protections;

21
             (b)    The claim must be one which arises out of or results from the defendant's
22                  forum-related activities, and

23           ( c)   Exercise of jurisdiction must be reasonable.

24   *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  The Court evaluates each requirement of the

25   three part test.

26           **(a)        Purposeful availment**

27           The "purposeful availment" requirement "ensures that a defendant will not be hauled into a

28   jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity

5

1    of another party or third person." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 379

2    F.3d 1120, 1129 (9th Cir. 2004).

3          As to a defendant's purposefully directed activities, the Ninth Circuit explained in *Sinatra v.*

4    *National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988):

5          Purposeful availment analysis examines whether the defendant's contacts with the forum
          are attributable to his own actions or are solely the actions of the plaintiff.  In order to

6          have purposefully availed oneself of conducting activities in the forum, the defendant
          must have performed some type of affirmative conduct which allows or promotes the

7          transaction of business with the forum state.

8    The requirement that "conduct is expressly aimed" at the forum state is satisfied "when the defendant

9    is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be

10   a resident of the forum state."  *Menken v. Emm*, 503 F.3d at 1059.  In tort cases, the Ninth Circuit

11   typically inquires whether a defendant "purposefully directs his activities" at the forum state, applying

12   an "effects" test which focuses on the forum in which the defendant's actions were felt, and whether or

13   not the actions themselves occurred within the forum.  *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir.

14   2007).  The "effects" test imposes three requirements: "the defendant allegedly must have (1) committed

15   an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is

16   likely to be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1206.

17         Illinois Central argues it did not have any contacts with California. To demonstrate an absence

18   of minimal contacts with California, Illinois Central provides evidence that it:

19         1.    Does not own or operate any railroad, freight or passenger cars in California nor has its

20              railroad cars traveled to California:

21         2.    Is not incorporated in or qualified to do business in California;

22         3.    Does not have any offices or facilities in California;

23         4.    Does not have active employees residing in California;

24         5.    Does not direct advertising toward California residents or businesses; and

25         6.    Does not own, use or possess any office, property or assets in Calfiornia.

26   (Doc. 50, Decl. Novak ¶2-11.)  Illinois Central argues that its contacts with California do not exist.

27   Illinois Central argues it has no contacts with California at all, and the accident which gave rise to the

28   underlying litigation occurred in Mississippi.

Plaintiffs, however, have alleged conduct which satisfies all three elements of the "effects" test. Plaintiffs allege Illinois Central's agents committed intentional acts of invading their privacy, defaming their character, by trespassing on their property and by stalking them.  Further, plaintiffs allege that the intentional conduct was aimed in California because the conduct actually occurred in California.  Finally, plaintiffs allege that they suffered harm as a result of the intentional acts in California.  Thus, the elements of the "effects" test are satisfied.

### (b)    Claim Arises out of Activities in California

Limited jurisdiction means jurisdiction is limited to causes of action arising out of or related to the nonresident's forum-related activities. *Doe v. National Medical Services*, 974 F.2d 143, 145 (10th Cir. 1992); *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992).  A "but for" test is used for determining whether the claim "arises out of" the nonresident's forum-related activities.  If plaintiff would not have suffered loss "but for" defendant's activities, this element is satisfied. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

Plaintiffs allege activities in California which harmed plaintiffs in California. Plaintiff allege stalking, which occurred in Fresno, nuisance which occurred in Fresno, and defamation (contacting plaintiffs' neighbors) in Fresno.  (SAC ¶66, "Over a period of 2 ½ years, . . .defendants ... followed, harassed, stalked, trespassed and invaded the privacy of plaintiffs and made threats.") Plaintiffs allege that:  "As recently as July 10, 2008, Defendants Canadian National . . .and their agents, were sent to Murphys, California to spy on Plaintiffs and invade their privacy, and at least one of them previously contacted neighbors of the plaintiffs and falsely told and published to Plaintiffs' neighbors that Defendants were investigating a case of "insurance fraud" on the part of Plaintiffs." (SAC ¶67.)  Torts committed by employees within the scope of their employment may subject a nonresident employer to local jurisdiction. *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1189 (9th Cir. 2002). Plaintiff alleges stalking of them in California: "Canadian National, . . . and their agents, employees, and/or investigators and co-conspirators, engaged in a pattern of conduct the intent of which was to follow, alarm, and harass Plaintiffs, invade Plaintiffs' privacy, and trespass upon Plaintiffs' property. . .") (SAC ¶75, 95.)  Thus, plaintiffs allege harmful conduct which occurred within California.

Illinois Central argues that it is not responsible for the investigation or "stalking" of plaintiffs.

7

1  Defendants submit evidence that the investigators were hired by another defendant to investigate

2  plaintiffs, and were not hired or controlled by Illinois Central.  (Doc.77, Reply Brief, p. 2; Doc. Decl.

3  Vendetti ¶2.)  Illinois Central argues that Amtrak provided Illinois Central with a defense in the

4  underlying Mississippi action and Amtrak hired an investigator who allegedly engaged in wrongful

5  conduct.  (Doc.77, Reply Brief, p. 2.)  Illinois Central also argues that it has never received any

6  documentation from the investigator with regard to the investigations of plaintiffs. (Doc.77, Reply Brief,

7  p. 3.)  Illinois Central argues that it never had any connection with the investigation of plaintiffs and any

8  statement to the contrary is "fabrication."

9       This Court, however, cannot assess the "truth" of factual allegations at this point in the litigation.

10  Illinois Central's argument merely contradicts the evidence presented by plaintiffs.  Any factual conflicts

11  in the parties' declarations must be resolved in plaintiff's favor.  *Harris Rutsky & Co. Ins. Services, Inc.*,

12  328 F.3d at 1129 ("conflicts between the facts contained in the parties' affidavits must be resolved in

13  [plaintiffs'] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.")

14  Factual contradictions are resolved in plaintiff's favor.  Accordingly, the facts show the claims arise out

15  of defendants' conduct in California.

16                    **( c) Reasonableness**

17       If the plaintiff succeeds in satisfying both of the first two prongs, "the burden then shifts to the

18  defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."

19  *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).  Here, plaintiff has satisfied the first two prongs

20  of the three prong test for specific jurisdiction.  Defendant Illinois Central must therefore make a

21  "compelling case" that exercise of jurisdiction would be unreasonable.

22       A "highly realistic" approach is required to determine whether a nonresident party is subject to

23  local jurisdiction.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477-478, 105 S.Ct. 77 (1985).  It

24  must appear that the exercise of jurisdiction by local courts in the particular case would "comport with

25  fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. at 477–478. Turning to

26  reasonableness to exercise personal jurisdiction, the Ninth Circuit Court of Appeals has developed a

27  seven-factor test:

28       1.       The extent of defendant's purposeful interjection into the forum state;

8

1    2.    The burden on defendant of defending in the chosen forum;

2    3.    The extent of conflict with the sovereignty of defendant's state;

3    4.    The forum state's interest in adjudicating the dispute;

4    5.    The most efficient forum for judicial resolution of the dispute;

5    6.    The importance of the forum to plaintiff's interest in convenient and effective relief; and

6    7.    The existence of an alternative forum.

7  *Core-Vent Corp. v. Nobel Industries, A.B.*, 11 F.3d 1482, 1487 (9th Cir. 1993).  None of these factors

8  is dispositive by itself.  They all must be balanced against the others.  *Roth v. Garcia Marquez*, 942 F.2d

9  617, 623 (9th Cir. 1991).

10                    ***Purposeful Interjection***

11           This factor is co-extensive with the purposefully directed activities analysis discussed above.

12  When there are only attenuated contacts with the forum, the "slightness of the purposeful interjection

13  'militates against' a finding of the reasonableness of jurisdiction." *Insurance Co. of North America v.*

14  *Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981); *Indiana Plumbing Supply, Inc. v. Standard*

15  *of Lynn, Inc.*, 880 F.Supp. 743, 748 (C.D. Cal. 1995).

16           Illinois Central argues that it had no purposeful interjection because the accident occurred in

17  Mississippi, and Illinois Central had no control over the investigators in California.  The evidence is in

18  dispute as to whether Illinois Central engaged in conduct in California through agents who harassed,

19  stalked and defamed plaintiffs.  For purpose of the balancing of factors, the Court considers this factor

20  neutral.

21                    ***Burden on Defendant***

22           This factor examines how difficult it will be for a defendant to travel to the forum state to defend

23  itself.  *Indiana Plumbing*, 880 F.Supp. at 748.  The Ninth Circuit Court of Appeals has commented:

24           The law of personal jurisdiction, however, is asymmetrical.  The primary concern is for
             the burden on a defendant.  *See World-Wide Volkswagen, supra*, 444 U.S. at 292, 100
25           S.Ct. at 564.  If the burdens of trial are too great for a plaintiff, the plaintiff can decide
             not to sue or, perhaps, to sue elsewhere.  A defendant has no such luxury.  The burdens
26           on a defendant are of particular significance if, as here, the defendant has done little to
             reach out to the forum state.

27

28  *Marina Salina Cruz,* 649 F.2d at 1272.  *See also Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d

848, 851-852 (9th Cir. 1993).

Illinois Central has not made a showing of any burden on it. Thus, this factor militates in plaintiffs' favor.

### Conflict with Sovereignty of Aircraft Maintenance's State

There is no argument as to any conflicts with any other sovereignty. As such, this factor appears neutral to plaintiffs and Illinois Central.

### Forum State's Interest

California has an interest in providing effective means of redress for its residents who are damaged by alleged tortious conduct. Thus, this factor favors plaintiffs.

### Most Efficient Resolution

"In evaluating this factor, we have looked primarily at where the witnesses and the evidence are likely to be located." *CoreVent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir.1993). Here, presumably, the witnesses and evidence of the alleged tortious conduct will mostly be in California because the tortious conduct occurred in California.

### Convenience and Effective Relief for Plaintiff

This Court is the more convenient and effective forum for plaintiff and most likely played a large part in plaintiffs' filing the action here. This factor favors plaintiffs.

### Existence of an Alternative Forum

Illinois Central bears the burden of proving the unavailability of an alternative forum. *Core-Vent Corp.*, 11 F.3d at 1490. No argument has been made on this element. Thus, this factor favors plaintiffs.

Weighing these seven considerations, the balance of factors does not favor Illinois Central. It has not presented a compelling case that the exercise of jurisdiction would be unreasonable. *See e.g., Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir.1998) ("[W]e conclude that although some factors weigh in [defendant's] favor, he failed to present a compelling case that the district court's exercise of jurisdiction in California would be unreasonable.") On balance, Illinois Central has not presented a compelling case that the exercise of jurisdiction would not comport with fair play and substantial justice and would thus be unreasonable.

1

**CONCLUSION**

2          For the foregoing reasons, Illinois Central's motion to dismiss for lack of personal jurisdiction

3   is DENIED.

4   IT IS SO ORDERED.

5   **Dated:    January 30, 2009**                        /s/ Lawrence J. O'Neill
                                                        UNITED STATES DISTRICT JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28